# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**GARRISON SOUTHFIELD
PARK LLC,**

               **Plaintiff,**

      **v.**

**CLOSED LOOP REFINING
AND RECOVERY, INC.,** *et al.,*

         **Defendants.**

         **Case No. 2:17-cv-783**
         **JUDGE EDMUND A. SARGUS, JR.**
         **Magistrate Judge Elizabeth P. Deavers**

**OLYMBEC USA LLC,**

               **Plaintiff,**

      **v.**

**CLOSED LOOP REFINING
AND RECOVERY, INC.,** *et al.,*

         **Defendants.**

         **Case No. 2:19-cv-1041**
         **JUDGE EDMUND A. SARGUS, JR.**
         **Magistrate Judge Elizabeth P. Deavers**

## OPINION AND ORDER

This matter is before the Court for consideration of seven joint motions that seek to approve eight settlement agreements and one consent decree between the plaintiffs in this case Garrison Southfield Park LLC ("Garrison") and Olymbec USA LLC ("Olymbec") (collectively, "Plaintiffs") and various defendants. (ECF No.s 420, 459, 472, 473, 488, 516 & 524).[1] If approved, the settlement agreements and consent decree would resolve liability between Plaintiffs and certain

---

[1] The joint motions for approval, response memoranda and reply memoranda in cases 2:17-cv-783 and 2:19-cv-1041 are almost identical. They are distinguished only by their docket entry numbers. Consequently, for the sake of efficiency, and to avoid confusion, all references in this Opinion and Order are to Case No. 2:17-cv-783, unless otherwise stated.

defendants under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended by the Superfund Amendments and Reorganization Act of 1986 ("SARA"), 42 U.S.C. § 9601 et seq.

Plaintiffs brought this action to recoup past and future cleanup costs that stem from the contamination of two warehouses owned by Garrison, located at 1655 and 1675 Watkins Road, Columbus, Ohio 43207, and one warehouse owned by Olymbec, located at 2200 Fairwood Avenue, Columbus, Ohio 43207 (together, the "Properties"). Each of the following groups of defendants are privy to one of the seven pending joint motions and its attached settlement agreement or consent decree: (i) Defendants Environmental Coordination Services and Recycling, Inc., F&F Environmental, Inc. d/b/a Quicksilver Recycling Services, and Sunnking, Inc. (ECF No. 420); (ii) the United States of America on behalf of its agency Defendant Federal Prison Industries, Inc. d/b/a UNICOR ("UNICOR") (ECF No. 429); (iii) Defendant Waste Commission of Scott County, Iowa (ECF No. 472); (iv) Defendant Comprenew (ECF No. 473); (v) Defendant Computer Recycling of Virginia, Inc. (ECF No. 488); (vi) Defendant eCycleSecure, LLC (ECF No. 516); (vii) and Defendant American Retroworks, Inc. (ECF No. 524) (the "Settling Defendants").

The following defendants have filed numerous responses to the joint motions: the Kuusakoski Defendants (ECF No.s 421, 476, 477, 478, 493, 520 & 528); Defendant IMS Electronics Recycling, Inc. (ECF No.s 479, 482, 500, 521 & 525); Defendant Rochester Computer Recycling & Recovery, LLC d/b/a/ EWaste+ (ECF No.s 489, 490, 491, 501 & 530); Defendant eCycleSecure LLC (ECF No. 483); and Defendant American Retroworks, Inc. filed a motion to join the Kuusakoski Defendants' response to Plaintiffs' joint motion for settlement with Defendant Computer Recylcing of Virginia (collectively, the "Dissenters"). (*See* ECF No.s 493 & 494).

2

Plaintiffs and certain members of the Settling Defendants have replied. (ECF No.s 422, 484, 485, 486, 497, 498, 503, 523 & 529).

The Court has combed through the extensive record in this case which includes ample amounts of briefing and documentation. After giving considerable time and thought to this task, the Court concludes, for the reasons set forth below, that the proffered settlement agreements and consent decree are fair, reasonable and consistent with the goals of CERCLA. Taking all of this into account, the Court **GRANTS** the joint motions and **APPROVES** the eight settlement agreements and one consent decree attached to them. (2:17-cv-783, ECF No.s 420, 459, 472, 473, 488, 516 & 524; 2:19-cv-1041, ECF No.s 334, 361, 364, 369, 374, 402 & 408). Additionally, Defendant American Retroworks, Inc.' motion for joinder is **GRANTED.** (2:17-cv-783, ECF No. 494; 2:19-cv-1041, ECF No. 379).

## I.

The facts of this case and its procedural history have been amply described in previous opinions. Yet, a brief recap of these matters along with the pending settlement agreements and consent decree is integral to the Court's decision.

### A. Background

Plaintiffs brought this suit to require "Defendant Closed Loop, Defendant Silagi, and the Arranger/Transporter Defendants to clean up and/or pay for the cleanup of more than 64,000 tons (128 million pounds) of e-waste that currently remains at the Properties." (ECF No. 85 at ¶ 8). According to Plaintiffs, the defendants in this case "collaborated in an elaborate sham recycling scheme that extended across the country to profit from the stockpiling and subsequent abandonment of more than 64,000 tons (128 million pounds) of hazardous electronic waste ("E-Waste")." (*Id.* at ¶ 2). It is Plaintiffs position that "the costs of removing and/or remediating nearly

10 acres of hazardous E-Waste at [Plaintiffs' properties] . . . will exceed $14.2 million." (*Id.*). In an effort to recoup the costs of remediation, Plaintiffs seek "declaratory relief, cost recovery, and common law damages resulting from environmental contamination caused by Defendant Closed Loop, Defendant Silagi, and the Arranger/Transporter Defendants at two contiguous warehouses owned by [Plaintiffs] and located at 1655 and 1675 Watkins Road, Columbus, Ohio 43207." (*Id.* ¶ 1).

### B. Procedural History

The settlements in this case have come in three rounds. The first round began on July 14, 2019 with the filing of a joint motion and settlement agreement that was granted and approved on July 16, 2019.[2] (ECF No.s 308 & 312). The second round began on July 22, 2019 with the filing of a second joint motion and settlement agreement that was granted and approved on August 23, 2019.[3] (ECF No.s 337 & 400). The third round began on September 30, 2019, and it encompasses seven joint motions, eight settlement agreements and one consent decree, all of which are currently pending approval (the "Third Round of Settlements"). (ECF No.s 420, 459, 472, 473, 488, 516 & 524).

Plaintiffs and the Settling Defendants (collectively, the "Settlors") have filed several joint motions in support of the Third Round of Settlements that are almost identical given that they include many of the same facts, law, conclusions and supporting documentation.[4] (*See id.*).

---

[2] The parties bound to this settlement agreement are: Plaintiffs and Defendants Arrow Recovery Group, Inc., B&K Technology Solutions Inc. d/b/a Advanced Technology Recycling, Cie International L.L.C. d/b/a C2 Management, Cohen Electronics, Inc., Green Chip, Inc., Green Tech Recycling, LLC, Interco Trading, Inc., JD Beavers Co. LLC, MRC I, LLC d/b/a MRC Recycling, ABC Corp Holdings LLC d/b/a Ohio Drop Off, LLC, Potomac Ecycle, LLC, and USB Recycling.com, LLC.. (*See generally* ECF No. 308-2).

[3] The parties bound to this settlement agreement are: Plaintiffs and Defendants e-Lot Electronics Recycling, LLC, eRevival LLC, and eWorks Electronics Services, Inc.. (*See generally* ECF No.s 337-2).

[4] On the subject of supporting documentation, Karl Heisler and Randall Womack, attorneys for Garrison and Olymbec, have authored several declarations that are attached to each joint motion as Exhibits B and C. (*See generally* ECF No.s

4

Consequently, the Court will give due consideration to each settlement agreement; but it will refer only to those legal arguments advanced in the first joint motion that initiated the Third Round of Settlements, unless otherwise stated. (ECF No. 420).

The Kuusakoski Defendants filed several responses to the Third Round of Settlements, reserving certain rights and incorporating by reference the same arguments that they made in ECF No. 354, which was their original response to the second round of settlements. (*Compare* ECF No. 354 *with* ECF No.s 421, 476, 477, 478, 493, 520 & 528). Defendant American Retroworks, Inc. filed a motion to join the Kuusakoski Defendants' response, adopting and incorporating their arguments and reservation of rights. (ECF No. 494). Defendant eCycleSecure LLC filed a response that incorporates by reference the Kuusakoski Defendants' arguments and reservation of rights, and Defendant IMS Electronics Recycling, Inc. filed responses that replicate the Kuusakoski Defendants' arguments. (ECF No.s 479, 482, 483, 500, 521 & 525). Defendant Rochester Computer Recycling & Recovery, LLC d/b/a/ EWaste+ ("Defendant RCRR") also filed responses that join the Kuusakoski Defendants' response memoranda, adopting and incorporating their arguments and reservation of rights. (ECF No.s 489, 490, 491, 501 & 530). Importantly, however, Defendant RCRR raises an objection to the specific terms of the UNICOR consent decree that was not articulated by the Kuusakoski Defendants. (ECF No.s 490). Thus, because the responses outlined above repeat substantially the same arguments raised by the Kuusakoski Defendants in ECF No. 354, and because Defendant RCRR has advanced a unique objection in ECF No. 490,

---

420, 459, 472, 473, 488, 516, 524). In the declarations, Heisler and Womack outline: (i) the investigations that took place at the Properties; (ii) the negotiations that occurred between Plaintiffs and the Settling Defendants; (iii) the cost recovery formulas used during the negotiations to allocate remediation costs; and (iv) the measures used to notify all interested parties of each settlement. (*See id.*). Because the declarations are virtually identical, the Court will only refer to the declarations attached to ECF No. 420, unless otherwise stated. (ECF No. 420-3, Heisler Decl. & ECF No. 420-4, Womack Decl.).

the Court will refer only to those arguments raised by the Kuusakoski Defendants and Defendant RCRR in ECF No.s 354 & 490, unless otherwise stated.

Finally, Plaintiffs, along with certain Settling Defendants, have filed several replies, some of which contain overlapping arguments and some of which do not. (ECF No.s 422, 484, 485, 486, 497, 498, 503, 523 & 529). Plaintiffs filed four replies which incorporate by reference the arguments advanced in ECF No. 394—Plaintiffs' reply in support of the second round of settlements. (ECF No.s 484, 485, 486 & 503). Therefore, with respect to these replies, Court will only address the arguments raised in ECF No. 394, unless otherwise stated. Additionally, Plaintiffs and the United States of America replied to Defendant RCRR's specific objections concerning the scope of the covenant not to sue in their consent decree. (ECF No.s 497 & 498). And the remaining replies address the increasing amount of discovery that has taken place since the Third Round of Settlements was initiated. (ECF No.s 523 & 529).

### C. The Settlements

The settlement agreements and consent decree are largely identical in form and substance. (*See generally* ECF No.s 420, 459, 472, 473, 488, 516 & 524). They each begin with a recital that outlines: (i) the approximate amount of E-Waste delivered to the Properties—80,000 tons; (ii) the estimated cleanup costs for the Properties which falls somewhere in the ballpark of $18 million dollars; and (iii) a restatement of Plaintiffs' position that each Settling Defendant is a PRP who arranged delivery of E-Waste to the Properties. (*See id.*). The recitals are followed by several provisions that discuss relevant claims—both released and retained, consideration, judicial approval of the agreements, Settlors' performance obligations, the Settling Defendant's representations, reservations of rights, and liability. (*See id.*). The agreements also reflect an understanding that Plaintiffs may sue the Settling Defendants in the event that significant new

information is discovered—the Reopener Clause, as well as an understanding that Plaintiffs will refund the Settling Defendants all or part of their respective settlement amounts if Plaintiffs successfully recover the full costs of remediating the Properties—the No Windfall Clause. (*See id.*).

Although largely identical, the settlement agreements and consent decree differ in some respects. Specifically, they distinguish the estimated amount of E-Waste that each of the Settling Defendants sent to the Properties as well as the amount of money that each of the Settling Defendants have agreed to pay for cleanup. (*See id.*). These differences are briefly outlined below.

Starting in chronological order, the December 20, 2018 settlement agreement between Plaintiffs and Comprenew, Inc. discloses that Comprenew, Inc. transported no more than 400,145 lbs of E-Waste to the Properties for which it will pay $10,000 in cleanup costs. (ECF No. 473, Exh. A).[5] According to the August 5, 2019 settlement agreement between Plaintiffs and F&F Environmental, Inc. d/b/a Quicksilver Recycling Services, Quicksilver will pay $33,195.83 in cleanup costs for transporting no more than 237,703 lbs of E-Waste to the Properties. (ECF No. 420-2 at 31). As to the September 10, 2019 settlement agreement between Plaintiffs and Sunnking, Inc., the agreement explains that Sunnking, Inc. arranged the transport of no more than 636,367 lbs of E-Waste to the Properties, so Sunnking, Inc. will pay $88,870.26 in cleanup costs. (ECF No. 420-2 at 48). The September 23, 2019 settlement agreement between Plaintiffs and Environmental Coordination Services and Recycling, Inc. states that Environmental Coordination Services and Recycling, Inc. will pay $44,805.28 to Plaintiffs for transporting no more than 320,834 lbs of E-Waste to the Properties. (ECF No. 420-2 at 14). By the terms of the December 19, 2019 settlement

---

[5] The Court notes that the Conprenew, Inc. settlement agreement has an effective date that is written in the agreement as December 20, 2018. (ECF No. 473, Exh. A at 1). Executives for Olymbec, Garrison and Comprenew, Inc. signed the settlement, and their signatures confirm that the agreement was executed in December of 2018. (*Id.* at 11).

7

agreement, which binds Plaintiffs and the Waste Commission of Scott County, the Waste Commission transported no more than 1,705,497 lbs of E-Waste to the Properties for which it will pay $238,176.98 in cleanup costs. (ECF No. 472, Exh. A).

Stepping into 2020, the January 6, 2020 settlement agreement between Plaintiffs and Computer Recycling of Virginia, Inc. requires Computer Recycling to pay $21,402.17 for transporting no more than 153,253 lb.s of E-Waste to the Properties. (ECF No. 488, Exh. A). As to the March 31, 2020 settlement agreement between Plaintiffs and eCycleSecure, LLC., the terms of that agreement disclose that eCycleSecure, LLC. transported no more than 7,054,560 lbs of E-Waste and will pay $903,432.50 in cleanup costs. (ECF No. 516, Exh. A). And the May 18, 2020 settlement agreement between Plaintiffs and American Reotrworks, Inc. pronounces that American Retroworks, Inc. transported no more than 2,528,422 lbs of E-Waste to Plaintiffs property and will pay $60,000 as its share of the cleanup. (ECF No. 524, Exh. A).

Finally, Plaintiffs and UNICOR seek approval of a jointly filed consent decree. (ECF No. 459). The terms of the consent decree are similar to the settlement agreements outlined above. (*See id.*). The major difference, again, lies in the estimated amount of E-Waste that UNICOR sent to Plaintiffs' properties, 4,634,549 lbs, and the amount of money that UNICOR has agreed to pay for cleanup, $647,226.51. (ECF No. 459 at ¶ 8-9). Importantly, the consent decree joins Plaintiffs to a "covenant not to sue the United states and its officers or employees" with respect to those claims, past, present and future that arise from UNICOR's conduct in this matter. (*Id.* at ¶ 13).

## II.

This Court has explained that "[t]he general policy of the law is to support voluntary settlements." *United States v. Cantrell*, 92 F. Supp. 2d 718, 723 (S.D. Ohio 2000). To answer the question of whether a proposed CERCLA settlement should be approved, the Court must

determine whether it is "fair, reasonable and adequate[,] in other words, consistent with the purposes that CERCLA is intended to serve." *Responsible Envtl. Sol. All. v. Waste Mgmt, Inc.*, No. 3:04-cv-013, 2011 WL 382617, at *2 (S.D. Ohio Feb. 3, 2011) (quoting *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1989); *see United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 85 (1st Cir. 1990) (explaining that approval of a settlement agreement is based on a trial court's determination that "the settlement is reasonable, fair and consistent with the purposes that CERCLA is intended to serve").

The Sixth Circuit emphasized in *Akzo Coatings* "that in determining whether settlement is fair, reasonable and consistent with the purposes of CERCLA, the District Court must apply an arbitrary and capricious standard." *Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, Case No.s 2:17-cv-783 & 2:19-cv-1041, 2019 U.S. Dist. LEXIS 143838, at *7 (S.D. Ohio Aug. 21, 2019); *see Responsible Envtl.*, 2011 WL 382617, at *2; *see also Akzo Coatings*, 949 F.2d at 1426–1426. A CERCLA settlement, of course, must also be "procedurally and substantively fair." *Responsible Envtl.*, 2011 WL 382617, at *2 (citing *Cannons Eng'g Corp.*, 899 F.2d at 86). Ultimately, when assessing a proposed CERCLA settlement, courts must remain cognizant that their function is not to "determine whether [a settlement] is the best possible settlement that could have been obtained, but only whether it is fair, adequate and reasonable." *Akzo Coatings*, 949 F.2d at 1436.

## III.

### A. Procedural Fairness

"Procedural fairness is one aspect of a settlement that is reasonable, fair, and consistent with CERCLA." *United States v. 3M Co.*, Case No. 3:14-cv-32, 2014 U.S. Dist. LEXIS 63934, at *8 (S.D. Ohio May 5, 2014) (citing *United States v. Cantrell*, 92 F. Supp. 2d 718 at 724). There is

a strong presumption of procedural fairness when CERCLA settlements are entered into voluntarily. *Id.* at *12 (citing *Akzo Coatings*, 949 F.2d at 1436). Yet, courts should still look "to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Id.* at *8 (quoting *Cannons Eng'g Corp.*, 899 F.2d at 86). Additionally, "[p]rocedural fairness requires that settlement negotiations take place at arm's length," which includes consideration of whether the parties had quality representation throughout their negotiations. *See Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, 2019 U.S. Dist. LEXIS 143838, at *8; *see also United States v. 3M Co.*, 2014 U.S. Dist. LEXIS 63934, at *8-9. Finally, the "Court must determine that the negotiators bargained in good faith." *See Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, 2019 U.S. Dist. LEXIS 143838, at *8; *see also Cantrell*, 92 F. Supp. 2d at 724.

Although the Dissenters in this case argue that they "cannot evaluate the fairness of the settlements at this time" because there has not been sufficient discovery, they do not object "to the proposed settlements, assuming [they] reserve all rights and that the current proposed settlements do not establish a precedent that later settlements must contain the same settlement terms or utilize the same settlement formula." (ECF No. 354 at 2).

Conversely, Settlors highlight several measures that they have taken to ensure the procedural fairness of each settlement agreement and consent decree. (ECF No. 420 at 6-7). Settlors aver, first, that "Plaintiffs have reviewed Closed Loop's records to identify the PRPs that arranged for E-Waste to be transported to the" contaminated properties. (*Id.*) (citing ECF No. 420-3 at ¶ 7 & 12, Heisler Decl. & ECF No. 420-4 at ¶ 7 & 12, Womack Decl.). Settlors argue, second, that "Plaintiffs' counsel have, by letter, electronic mail, and/or telephone, invited all of these [potentially responsible parties ("PRP")] to negotiate settlements to pay for the removal and remediation of the E-Waste that they contributed to the Facility." (*Id.*) (citing ECF No.s 420-3 at

10

¶ 12, Heisler Decl. & 420-4 at ¶ 12, Womack Decl.). Settlors claim, third, that they have negotiated with all parties who have expressed an interest in doing so, and that each of the Settlors was represented through independent counsel throughout the negotiations. (*Id.*) (citing ECF No. 420-3 at ¶ 13, Heisler Decl. & 420-4 at ¶ 13, Womack Decl.). And, finally, the Settlors contend that the negotiations were in good faith and "included, but were not limited to, evaluations of Settlors' potential liability, the evidence tying Settlors to Plaintiffs' [properties], the defenses asserted by Settlors, the potential legal fees and costs if settlement does not occur, and past and projected future remediation costs." (*Id.*) (citing ECF No. 420-3 at ¶ 13, Heisler Decl. & 420-4 at ¶ 13, Womack Decl.).

The measures highlighted by the Settlors, in conjunction with the fact that the Dissenters do not oppose procedural fairness, leads the Court to conclude that the proposed settlement agreements and consent decree are the product of arm's length negotiations. Moreover, the record does not indicate, nor does any party contend, that the negotiations occurred in bad faith. For these compelling reasons, the standard of procedural fairness has been met. Accordingly, the Court will now consider whether the settlement agreements and consent decree are substantively fair. *Responsible Envtl.*, 2011 WL 382617, at *2 (citing *Cannons Eng'g Corp.*, 899 F.2d at 86).

### B. Substantive Fairness

"Substantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Cannons Eng'g Corp.*, 899 F.2d at 87. In other words, "settlement terms must be based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each PRP has done." *Id.* Yet, "[t]here is no universally correct approach" for determining

11

comparative fault and, by extension, substantive fairness. *United States v. Atlas Lederer*, 494 F. Supp.2d 629, 636 (S.D. Ohio July 13, 2005) (quoting *Cannons Eng'g*, 899 F.2d at 87).

Nevertheless, in deciding whether to approve a settlement agreement, the ultimate goal of the district court is to ensure the settlements are "fair, reasonable and consistent with the purposes of CERCLA" which, as the United States Supreme Court has explained, are to "prompt cleanup of hazardous waste sites and impos[e] . . . all cleanup costs on the responsible party." *Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, 2019 U.S. Dist. LEXIS 143838, at *9 (citing *Key Tronic Corp.*, 511 U.S. 809, 815 n.6 (1994)). Using these principles as a guide, the Court will determine whether the settlement agreements and consent decree fall appropriately within their scope.

By and large, the Dissenters, "without agreeing that the[] . . . settlements are "fair[], reasonable[] and consisten[t] with the [CERCLA] statute," "do not object to the proposed settlements." (ECF No. 354 at 8). In support of this position, the Dissenters have presented a number of arguments for the Court's consideration. (*See id.*). First, they aver that they cannot determine the fairness of each settlement because "[n]o discovery has been taken by any party." (*Id.*). In that same vein, they highlight that the settlement agreements are predicated on the relative volume of materials each Settling Defendant sent to the sites, instead of the entire volume of materials sent by all PRPs. (*Id.* at 3)

Second, the Dissenters argue that apportionment of liability in each settlement is likely incorrect because the settlements fail to account for "the owner, operator, or transporter shares." (*Id.* at 4–5). In their view, the settlements erroneously attribute the "settling arranger parties (only one of the four CERCLA categories of potentially responsible parties)" with "100 percent of the remediation costs as opposed to splitting only the 'arranger share' of the remediation costs." (*Id.*).

Third, the Dissenters contend that "[o]ther settlement terms should not be assumed fair or precedential" for the following reasons: (i) the settlement estimates of future cleanup costs are disputed allegations at this point and any terms based on those figures cannot "be seen as evidence or as precedential for any future settlements;" (ii) "the scope of protection offered to" the Settling Defendants by Plaintiffs "may be insufficient for future settlements" because "the settlement agreements are not contingent on the settling parties receiving CERCLA § 122(f) covenant not to sue protection;" and (iii) it "is too early, and unnecessary, to decide on a blanket application of [a pro tanto] approach [to the allocation of settlement proceeds.]" (*Id.* at 7–8). Fourth, Defendant RCRR specifically objects to the fairness of Plaintiffs' settlement agreement with UNICOR, arguing that the settlement agreement allegedly contains "overly broad release language in Paragraph 13" capable of abrogating a non-settling parties' "ability to bring claims against any other Federal entities" that potentially contaminated the warehouses. (ECF No. 490 at 2).

Settlors push back, arguing that the settlement agreements are substantively fair. (ECF No. 420 at 7). Specifically, Settlors maintain that the apportionment of liability in each settlement is based on a fair and equitable cost recovery formula which requires each Settlor "to pay a percentage of the total cleanup costs equivalent to the percentage of the E-Waste attributed to the Settlor." (*Id.* at 8). The Settlors also highlight that each agreement contains reopeners that "allow Plaintiffs to seek additional costs from each Settlor if new evidence reveals that the amount of Settlor's E-Waste generates cleanup costs that are substantially higher than the amount of E-Waste currently attributed to Settlor." (*Id.*).

Settlors also reject the notion that the proposed settlements are supported by nothing more than allegations. (ECF No. 394 at 6–8). They appear to concede that four of the seven settlement agreements in the Third Round of Settlements are not supported by formal discovery; nevertheless,

Settlors point out that those same agreements are supported by settlement discussions that began almost two years ago which, in their view, "belies the . . . assertion that little information has been provided." (ECF No.s 394, 484, 485, 486 & 503).

Specifically, Settlors contend that, over the past two years, they have: (i) exchanged weekly emails and telephone calls with non-settling parties; (ii) collectively discussed "environmental cleanup estimates, the proposed approach for environmental cleanup, related litigation, ongoing negotiations with the Ohio Attorney General's Office, . . . and the terms and conditions of a potential settlement[;]" (iii) provided ample opportunities to make inquiries; (iv) sent thousands of pages of records to non-settling parties; and (v) permitted non-settling parties to conduct "multiple site visits a the Plaintiffs' properties . . . [to observe] firsthand perhaps the most critical 'evidence' in this case[;]" and (vi) produced relevant records and information to all of the other non-settling parties who have joined the Kuusakoski Defendants' response, with the exception of Defendants Accurate IT Services Ltd., Environmental Coordination Services & Recycling, Inc., and the Waste Commission of Scott County, Iowa, who declined invitations to negotiate in September 2017. (ECF No. 394 at 6–7).

In support of two recently filed settlement agreements located at ECF No.s 516 and 524, Settlors contend not only that they "produced thousands of pages of records" to non-settling parties "long before formal discovery began[,]" but also that they "produced nearly a quarter of a million additional pages to all of the Defendants in its Rule 26(a)(1) initial disclosures – pages that include all of the records collected from Defendant Closed Loop Refining and Recovery, Inc. specific to the shipments made by all of the Defendants, including accounting records, bills of lading, weight tickets, commodity purchase agreements, contracts, and other shipping documentation" that can

be used to judge the volumetric accuracy of each settlement agreement and consent decree. (ECF No.s 523 & 529).

Additionally, Settlors contend that, in "accounting for owner liability, there is no basis for the assertion that the proposed settlement agreements and the settlement strategy disregard Plaintiffs' liability." (*Id.* at 10). Settlors point out that Plaintiffs "remain potentially liable for a portion of the growing orphan share created by" PRPs who have declared bankruptcy. (*Id.*). Settlors also highlight that Plaintiffs have depleted their own funds in an effort to recover the response costs of remediation, which is evidenced by the fact that they have: (i) prosecuted this litigation, (ii) acquired Defendant Closed Loop's records, (iii) negotiated and drafted the settlement agreements, and (iv) absorbed significant financial losses from Closed Loops' operations. (*Id.* at 10–11).[6]

Settlors also note, as they have in prior motions, that: (i) they are unable to account for operator liability for two practical reasons. (*Id.* at 12–13). First, "Defendant Closed Loop is defunct and all three of its principals declared bankruptcy." And, second, they are not aware of any transporters that "'selected' Plaintiffs' properties as the site for treatment or disposal, in keeping with the requirements for transporter liability [under] CERCLA." (*Id.* at 12–13).

Settlors further contend that the "settlement terms are fair and warrant precedential consideration." (*Id.* at 13). In their view, any objection to the Third Round of Settlements that cites

---

[6] Settlors distinguish the current facts from *Carolina Pines I, LLC v. City of Abbeville Pub. Works*, No. 142-3:16-cv-01124-TLW (D.S.C. Nov. 14, 2018), a case cited by Defendants. In *Carolina Pines*, the District of South Carolina found that the defendants' CERCLA response cost allocation should be reduced by 60% based on the plaintiff's own liability. *Id.* at 26. However, unlike the facts before the Court, Settlors note that the *Carolina Pines* property owner had exclusive access to the property and "ultimately benefitted from the timely clean up of the E-Waste" when it sold the affected warehouse. *Id.* at 24. Here, Settlors argue the Ohio Environmental Protection Agency ("EPA") routinely inspected the property. (ECF No. 394 at 11). In addition, Settlors point out that Plaintiffs have suffered severe financial losses from Defendants' operations. (*Id.*).

the lack of a CERCLA § 122(f) covenant not to sue is baseless given that the provision has no applicability to a cost recovery action filed by private parties. (*Id.* at 13). For that reason, Settlors argue not only that a settlement agreement can be fair, reasonable, and consistent with the purposes of CERCLA in the absence of such a covenant, but also that the Dissenters "have no standing to complain about the scope of contribution protection provided to other PRPs." (*Id.* at 14). Settlors highlight further that this Court has employed the *pro tanto* approach because it "is more conducive to achieving CERCLA's goals of early settlement and private remediation of hazardous waste sites." (*Id.*) (quoting *Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115 (S.D. Ohio Apr. 18, 2016)) (Exhibit F, ECF No. 337-7).

Finally, Plaintiffs and UNICOR have specifically addressed the objections that Defendant RCRR raised to their consent decree. (*See generally* ECF No.s 497 & 498). In particular, they argue that Defendant RCRR misstated the scope of the consent decree's release given that: (i) Plaintiffs are the only ones covenanting not to sue the United States; and (ii) the contribution protections contained in the decree only apply to the United States, on behalf of the UNICOR. (*See id.*).

For all of these reasons, Settlors maintain that the proposed settlement agreements and consent decree should be approved on the basis that they are fair, reasonable and consistent with the goals of CERCLA.

### 1. Apportionment of Liability

Settlors' arguments are persuasive. As a fundamental matter, a court's assessment of a proposed settlement under the arbitrary and capricious standard need only consider whether there is "some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each PRP has done."

*Responsible Envtl.*, 2011 WL 382617, at *2 (quoting *Cannons Eng'g Corp.*, 899 F.2d at 87). "As long as the measure of comparative fault on which the settlement terms are based is not 'arbitrary, capricious, and devoid of a rational basis,' the district court should uphold it." *United States v. Se. Pa. Transp. Auth.*, 235 F.3d 817, 824 (3d Cir. 2000).

Settlors have offered compelling evidence which demonstrates that the proposed apportionments of liability are fair and reasonable. In support of their position, Settlors rely on the sworn testimony of Heisler and Womack who attest that:

> Plaintiffs are using a straightforward cost recovery formula in settlement negotiations that allocates a percentage of the remediation costs to each PRP based on records that identify the total weight of E-Waste that the PRP shipped to the Facility, as compared to the total weight of the E-Waste shipped by all PRPs. Plaintiffs then applied this percentage to the estimated combined cleanup costs of $18,371,174.98. Using this formula, Plaintiffs have calculated each Settlor's fair share for settlement purposes to be the Settlement Amount listed in Appendix A to the Settlement Agreements, and each Settlor has agreed to pay this amount.

(ECF No. 420-3 at ¶ 11, Heisler Decl. & ECF No. 420-4 at ¶ 11, Womack Decl.) (footnote omitted).

Heisler and Womack also testified that all PRPs were invited "to negotiate settlements to pay for the removal and remediation of the E-Waste that they contributed to the Facility, except for bankrupt, dissolved, or defunct PRPs and PRPs that sent a *de minimus* amount of E-Waste that will cost no more than $6000 to remediate." (ECF No. 420-3 at ¶ 12, Heisler Decl. & ECF No. 420-4 at ¶ 12, Womack Decl.). Moreover, the Settling Defendants have offered sworn declarations from their counsel which state that the pending settlement agreements and consent decree were negotiated independently. (ECF No.s 420-5, 459-5, 472-5, 473-5, 488-5, 516-5 & 524-5). Many of the declarations elaborate farther and explain specifically that the negotiations considered potential liability, evidence tying the Settling Defendants to the Properties, viable defenses,

potential legal fees and costs, and past and projected future cleanup costs for the Properties. (ECF No.s 420-5, 472-5, 473-5, 488-5 & 516-5).

After giving due consideration to the circumstances set forth above, the Court finds that Settlors rationally apportioned liability in their proposed settlement agreements. The percentage of liability attributed to each PRP is based on information currently available to the parties, i.e., the total weight of E-Waste that each PRP shipped to the Properties. Several courts have concluded that similar volumetric approaches are reasonable. *See Cannons Eng'g*, 899 F.2d at 88 ("[Settlors] adhere generally to principles of comparative fault according to a volumetric standard, determining the liability of each PRP according to volumetric contribution. And, to the extent they deviate from this formulaic approach, they do so on the basis of adequate justification"); *see also United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 687 (D.N.J. Sept. 29, 1989) ("[t]he volumetric share and concomitant dollar sum which underlie this settlement do, it seems to [the court], reside comfortably within the plausible parameters of those settlors' potential equitable liability, be it high or low"). Importantly, this Court accepted the same volumetric approach in its August 21, 2019 decision, and the Dissenters have not advanced any arguments on this subject that were not already considered at that time. *See generally Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, 2019 U.S. Dist. LEXIS 143838.

Moreover, the fact that there is imprecision in Settlors' apportionments of liability does not mean that the settlement agreements and consent decree are inherently unfair and unreasonable. *See Responsible Envtl.*, 2011 WL 382617, at *2; *see also Rohm*, 721 F. Supp. at 685 ("[w]e need not determine if the settlement precisely reflects what we feel to be the settlors' most likely volumetric share of the waste dumped at [the plaintiff's property]. Such a finding would be akin to that made at trial and would involve no savings in terms of judicial or enforcement resources");

*see also Best Foods v. Aerojet-General Corp.*, 2000 U.S. Dist. LEXIS 12712, *16-17 (W.D. Mich. Aug. 24, 2000) (noting that, with respect to apportionment, "[d]ifficulty or imprecision in determining measurements of relative fault will not preclude the trial court from entering a consent decree."); *see also In re Acushnet River & New Bedford Harbor*, 712 F. Supp. 1019, 1032 (D. Mass. Apr. 27, 1989) (explaining that, it is "self-evident that generally defendants do not settle litigation for the full value of the asserted damages . . . . [I]n the general run of CERCLA cases . . . defendants will generally settle for substantially less — indeed, often for far less given the inherent problems of proof in these cases — than the asserted damages").

The Court notes, as the Dissenters suggest, that a lengthier and more thorough examination of discovery would likely yield greater accuracy in apportionment of liability; yet, Settlors have sensibly resolved their disputes in a manner that aligns with CERCLA's principal purposes which include the "achievement of prompt settlement and a concomitant head start on response activities." *Akzo Coatings of Am.*, 949 F.2d at 1433. More importantly, Settlors agreed to an estimated apportionment of liability that even the Dissenters concede is likely "well more than their proportional amount." (ECF No. 354 at 2). For these reasons, imprecision in the apportionment of liability is not dispositive of whether the settlements and consent decree are fair and reasonable.

The Dissenters also argue that Settlor's methodology is deficient because it does not consider owner, operator, or transporter liability, but this argument also lacks merit. As this Court, and many others, have previously noted, "the Court is not determining whether such liability can be imposed upon any one [PRP] or more or all of them. Rather, the Court is assessing whether the Plaintiff's position that such liability [can or] cannot be imposed is objectively reasonable."

*Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, 2019 U.S. Dist. LEXIS 143838, at \*19; *see Responsible Environmental*, 2011 WL 382617, at \*3.

Importantly, Settlors highlight that their methodology incorporates Plaintiffs' liability as an owner because Plaintiffs remain liable for the growing portion of cleanup costs left behind by defunct entities. Settlors also appropriately underscore that Plaintiffs have received a sensible apportionment of liability in this case by virtue of the fact that: (i) they have not benefitted from any clean-up efforts; (ii) they did not have exclusive access to the affected properties; and (iii) they are funding this litigation, as well as ongoing negotiations. Aside from these observations, the Dissenters have not sufficiently explained why Settlors should be barred from considering the defunct status of Defendant Closed Loop and its operator subsidiaries. In a real sense, Plaintiffs cannot expect to recoup cleanup costs from defunct entities, and little would have been gained through settlement efforts directed towards that end. The Court also notes that Plaintiffs are attempting to recoup certain costs from the insurance agencies that covered the aforementioned entities, but there is no guarantee that those efforts will bear fruit since, as Plaintiffs contend, the insurance carriers are litigating against their claimed liability. Additionally, the Court agrees that consideration of transporter liability is of no moment given that Settlors have no knowledge of transporters who selected the Properties for E-Waste disposal.

And, finally, the Dissenters have failed to demonstrate that the consent decree between Plaintiffs and UNICOR contains "overly broad release language in Paragraph 13." The provision at issue states, in relevant part, that "Garrison and Olymbec release and covenant not to sue the United States and its officers or employees acting within the scope of their employment with respect to the Response Costs or Response Actions." (ECF No. 459-2 at ¶ 13). The provision goes on to state that, "[t]his release and covenant apply to any Claims, including Claims for damages,

20

that were asserted, could have been asserted, or could now be asserted with respect to the allegations against UNICOR contained in the Original Complaint, Amended Complaint, and Complaint." (*Id.*). It is true that the consent decree bars Plaintiffs' ability to bring future claims against the United States as they relate to UNICOR's conduct in this matter. But it does not follow that Paragraph 13 bars non-settling parties from asserting the same. (*See id.*). In that same vein, Paragraph 22 of the consent decree, which states that "the United States, on behalf of UNICOR, is entitled . . . to protection from contribution actions or Claims," only bars potential claims against the United States that are predicated on UNICOR's conduct, not all claims against the United States generally. (*Id.* at ¶ 22). For these reasons, the Court is not convinced that the consent decree cuts off all potential claims against the United States, as the Dissenters argue.

The Court, therefore, concludes that Settlors' liability allocation in the proposed settlement agreements is fair and reasonable.

### 2. Proposed Terms and CERCLA's Purpose

The Court finds Settlors' proposed terms are consistent with the purposes of CERCLA. As noted *supra*, Congress enacted CERCLA in order to effectuate the "prompt cleanup of hazardous waste sites and [the] imposition of all cleanup costs on the responsible party." *Key Tronic*, 511 U.S. at 815 n.6. First, with respect to whether the pending settlement agreements should include certain covenants not to sue, the Court agrees with Settlors that neither CERCLA § 122(f) nor 42 U.S.C. § 9622(f) apply to settlement agreements between private parties. The relevant language of the statute explains that: "[t]he President may, in his discretion, provide any person with a covenant not to sue concerning any liability to the United States under this chapter, including future liability." 42 U.S.C. § 9622(f). The settlement agreements do not involve the President or the United States; therefore, CERCLA § 122(f) is not applicable and a covenant not sue under that

section is not required. To be sure, the consent decree between Plaintiffs and UNICOR involves the United States, but as this this Court stated in prior opinions, "nothing in § 122(f) requires the imposition of a covenant not to sue." *Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, 2019 U.S. Dist. LEXIS 143838, at *20. Indeed, CERCLA § 122(f) demarcates the criteria that covenants not to sue must conform to, but nowhere in the statute is there a pronouncement that such covenants must be included in all settlements concerning the United States. *See* 42 U.S.C. § 9622(f). Moreover, the text of the statute expresses a clear concern for covenants that will bar the United States from bringing future claims against settlors which is why it requires settlements with such covenants to include an exception that permits future litigation between the United States and the settlors in the event that new evidence is discovered. 42 U.S.C. § 9622(f)(6)(A). In other words, the statute takes extra precautions to guards against the same covenants that the Dissenters contend must be included. These circumstances support a finding that the consent decree between Plaintiffs, UNICOR, and the United States need not include a CERCLA § 122(f) covenant not to sue.

Second, the Court concludes that the consent decree and settlement agreements appropriately employ the *pro tanto* approach to allocate settlement proceeds. In *Hobart*, this Court explained that:

> The [pro rata] approach, embodied in the Uniform Comparative Fault Act ("UCFA"), reduces the plaintiffs' claims against the non-settling defendants by the amount of the settling defendant's proportionate share of fault, as later determined at trial. Because the non-settling defendants are held responsible for their own proportional share, the plaintiffs must absorb any shortfall if they settle for too little. *AmeriPride Servs. Inc. v. Texas Eastern Overseas Inc.*, 782 F.3d 474, 483–84 (9th Cir. 2015).

> In contrast, the pro tanto approach, embodied in the Uniform Contribution Among Tortfeasors Act ("UCATA"), reduces the plaintiffs' claims against the non-settling defendants by the dollar value of the settlement. Under this scenario, if

the plaintiffs settle for too little, all non-settling PRPs bear the risk of being liable for more than their fair share of the response costs.

*Hobart*, No. 3:13-cv-115, at \*2–\*3 (Exhibit F, ECF No. 337-7).

The *Hobart* court noted the pro tanto approach facilitates the purposes of CERCLA because it "encourages early settlement by 'placing the risk of lenient settlements on PRP holdouts,' who know that they may be called upon to make up any shortfall." *Id.* at \*5 (quoting *Action Mfg. Co., Inc. v. Simon Wrecking Co.*, 428 F. Supp. 2d 288, 326 (E.D. Pa. 23006). In addition the *Hobart* court pointed out that the pro tanto approach "encourages private remediation of hazardous waste sites, because private parties who undertake clean-up efforts are more likely to be able to completely recoup their response costs." *Id.* Finally, the *Hobart* court stated that a pro rata or proportionate share analysis can be a very "complex and unproductive inquiry and may be unrealistic in situations where waste was deposited by hundreds of polluters for years, if not decades, prior to the litigation." *Id.* at 7 (quoting *American Cyanamid Co. v. Capuano*, 381 F.3d 6, 20 (1st Cir. 2004) (internal quotations omitted).

In the August 21, 2019 decision, this Court concluded that the *pro tanto* approach was proper and consistent with the purposes of CERCLA. *Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, 2019 U.S. Dist. LEXIS 143838, at \*21-23. In so doing, the Court focused heavily on the circumstances of the case that existed at that time. (*Id.*). Specifically, the Court noted that neither the Kuusaokoski Defendants nor the defendants who joined their response opposed an application of the *pro tanto* method. (*Id.*). In that same vein, the Court clarified that non-settling parties could object to future settlements that used the *pro tanto* approach because the Court's decision did not countenance its blanket application. (*Id.* at \*21-22). The Court also observed that the repercussions of the *pro tanto* approach were not as gripping at the time given that the early stages of negotiations had only produced a handful of settlors. (*Id.* at \*23). These

considerations remain salient, and they support the Court's conclusion that the settlement agreements and consent decree appropriately employ the *pro tanto* approach.

Here, as was the case leading up to the Court's August 21, 2019 decision, the Dissenters do not oppose application of the *pro tanto* method in the proposed settlement agreements and consent decree; yet, they reserve their right to do so in the future. (*See* ECF No.s 354 & 490). That said, the current circumstances of this case support an application of the *pro tanto* approach, just as they did around the time of the Court's August 21, 2019 decision. Specifically, when the second round of settlements were approved, only fifteen of the fifty-two original defendants in the Garrison litigation (2:17-cv-783) had settled. The Court concluded, in part, that the *pro tanto* method was proper since only a handful of defendants had settled. *Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, 2019 U.S. Dist. LEXIS 143838, at *22-23. The Third Round of Settlements would increase the pool of defendants who have settled from fifteen to twenty-four. While the Court notes that twenty-four settlors is noteworthy, there is still a significant amount of progress needed to resolve the remaining claims in this case. As such, the Court is confident that application of the *pro tanto* approach will best serve the purposes of CERCLA at this time given that the approach is known to facilitate settlement among holdout defendants who "know that they may be called upon to make up any shortfall." *Hobart*, No. 3:13-cv-115, at *2. Moreover, while some discovery has taken place since the second round of settlements were approved, neither the Settlors nor the Dissenters contend that they will be able to perform a *pro rata* analysis in a manner that will avoid erroneous outcomes.

Because the Court finds the contested terms of the proposed settlement agreements, i.e., the allocation of liability, absence of a covenant not to sue, and application of *pro tanto*, are fair,

reasonable, and consistent with the purposes of CERCLA, the proposed agreements are substantively fair. Accordingly, the Court finds the following:

1. Settlors' joint motions for approval are **GRANTED**.

2. The eight settlement agreements and one consent decree attached the joint motions are approved, and their terms and conditions are hereby incorporated by reference into this Order as if fully restated herein.

3. Except for the exceptions stated in the settlement agreements and consent decree, all claims asserted, to be asserted, or which could be asserted against the Settling Defendants by persons who are defendants or third-party defendants in this case (whether by cross-claim or otherwise) or by any other person or entity (except the U.S. Environmental Protection Agency ("U.S. EPA"), the United States acting on U.S. EPA's behalf, the Ohio Environmental Protection Agency ("Ohio EPA"), and the State of Ohio acting on Ohio EPA's behalf) in connection with the presence, generation, transportation, storage, treatment, disposal, abandonment, release, threatened release, removal, remediation, monitoring, or engineering control of electronic waste at, to or migrating from Garrison's properties located at 1655 and 1675 Watkins Road in Columbus, Ohio and Olymbec's property located at 2200 Fairwood Avenue in Columbus, Ohio under Sections 107 or 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9607 and § 9613, and/or any other federal, state or local statute, regulation, rule, ordinance, law, contract, common law, or any other legal theory are hereby discharged, barred, permanently enjoined, dismissed with

prejudice, satisfied, and are otherwise unenforceable in this case or in any other proceeding.

4. The payments by the Settling Defendants to Plaintiffs shall be credited *pro tanto,* and not *pro rata,* during any equitable allocation of response costs among liable parties by the Court in this matter pursuant to 42 U.S.C. § 9613(f)(1). The liability of the remaining liable parties shall accordingly be reduced by the dollar amount of the Settling Defendants' settlement payments, and the Court need not determine the Settling Defendants' proportionate share of liability.

5. The Settling Defendants are dismissed from this case.

6. Pursuant to the authority contained in *Kokkonen* v. *Guardian Life Ins. Co. of America,* 511 U.S. 375 (1994), this Court hereby retains jurisdiction and shall retain jurisdiction after entry of final judgment in this case to enforce the terms and conditions of the settlement agreements and consent decree.

## IV.

For the reasons stated above, Settlors' joint motions to approve the settlement agreements and consent decree are **GRANTED.** (2:17-cv-783, ECF No.s 420, 459, 472, 473, 488, 516 & 524; 2:19-cv-1041, ECF No.s 334, 361, 364, 369, 374, 402 & 408). Defendant American Retroworks, Inc.' motion for joinder is **GRANTED.** (2:17-cv-783, ECF No. 494; 2:19-cv-1041, ECF No. 379). And the Clerk is **DIRECTED** to remove the following defendants from Case No.s 17-cv-783 and 19-cv-1041: Environmental Coordination Services and Recycling, Inc., F&F Environmental, Inc. d/b/a Quicksilver Recycling Services, Sunnking, Inc, the United States of America on behalf of its agency Defendant Federal Prison Industries, Inc. d/b/a UNICOR, Waste Commission of Scott

County, Iowa, Comprenew, Inc., Computer Recycling of Virginia, Inc., Defendant eCycleSecure, LLC and American Retroworks, Inc..

**IT IS SO ORDERED.**

8/3/2020

_____

**DATE**

s/Edmund A. Sargus, Jr.

_____

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**