**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GARRISON SOUTHFIELD PARK LLC,<br><br>Plaintiff,<br><br>v.<br><br>CLOSED LOOP REFINING AND<br>RECOVERY, INC., *et al.*,<br><br>Defendants. | Case No. 2:17-cv-783-EAS-EPD<br><br>JUDGE EDMUND A. SARGUS, JR.<br><br>MAGISTRATE JUDGE<br>ELIZABETH PRESTON DEAVERS |
| OLYMBEC USA LLC,<br><br>Plaintiff,<br><br>v.<br><br>CLOSED LOOP REFINING AND<br>RECOVERY, INC., *et al.*,<br><br>Defendants. | Case No. 2:19-cv-1041-EAS-EPD<br><br>JUDGE EDMUND A. SARGUS, JR.<br><br>MAGISTRATE JUDGE<br>ELIZABETH PRESTON DEAVERS |

**<u>MOTION FOR APPROVAL OF SETTLEMENT AGREEMENTS EXECUTED BY
PLAINTIFF GARRISON SOUTHFIELD PARK LLC, PLAINTIFF OLYMBEC USA
LLC, DEFENDANT LG ELECTRONICS U.S.A., INC., DEFENDANT ELECTRONIC
MANUFACTURERS RECYCLING MANAGEMENT COMPANY, LLC, DEFENDANT
SAMSUNG ELECTRONICS AMERICA, INC., DEFENDANT KUUSAKOSKI INC.,
DEFENDANT KUUSAKOSKI US LLC, DEFENDANT KUUSAKOSKI GLASS
RECYCLING LLC, AND DEFENDANT VINTAGE TECH, LLC</u>**

Plaintiff Garrison Southfield Park LLC ("Garrison"), Plaintiff Olymbec USA LLC

("Olymbec"), Defendant LG Electronics U.S.A., Inc. ("LG"), Defendant Electronic

Manufacturers Recycling Management Company, LLC ("MRM"), Defendant Samsung

Electronics America, Inc. ("Samsung"), Defendant Kuusakoski Inc., Defendant Kuusakoski US

LLC, Defendant Kuusakoski Glass Recycling LLC, and Defendant Vintage Tech, LLC move the Court to enter an order approving the Settlement Agreements attached hereto as Exhibits A-1, A-2, and A-3 as a final judgment in accordance with Federal Rules of Civil Procedure 54(b) and 58. For purposes of this Motion, Plaintiff Garrison and Plaintiff Olymbec will be referred to as the "Plaintiffs"; Defendant LG, Defendant MRM, and Defendant Samsung will be referred to as the "Settlors"; and Defendant Kuusakoski Inc., Defendant Kuusakoski US LLC, Defendant Kuusakoski Glass Recycling LLC, and Defendant Vintage Tech, LLC will be referred to, respectively and together, as the "Kuusakoski Defendants." This motion is supported by the attached Memorandum in Support and the attached Settlement Agreements.[1]

For the Court's convenience, a proposed order has been attached hereto.

## MEMORANDUM IN SUPPORT

### I. Background

Plaintiffs, Settlors, and the Kuusakoski Defendants have negotiated settlements and seek the Court's approval of the settlement agreements attached hereto as Exhibits A-1, A-2, and A-3 ("the Settlement Agreements"). The Settlement Agreements resolve Plaintiffs' claims against Settlors pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, and Ohio common law, for past and projected response costs to clean up cathode ray tubes and other electronic wastes (collectively, "E-Waste") at Garrison's two contiguous warehouses located at 1655 and 1675 Watkins Road in Columbus, Ohio[2] and at Olymbec's warehouse located at 2200 Fairwood Avenue in Columbus,

---

[1] Unless otherwise indicated, all references to the court docket will be to the court docket in the Garrison action (Case No. 2:17-cv-783).
[2] Garrison sold 1655 Watkins Road after cleaning it up with settlement funds obtained in this case.

Ohio (collectively, the "Facility").

Defendant Closed Loop Refining and Recovery, Inc. ("Closed Loop") leased the Facility or portions thereof from the Plaintiffs, and Closed Loop or Closed Loop Glass Solutions, LLC (an affiliate of Closed Loop) then received, stockpiled, and abandoned E-Waste received from or otherwise attributed to their customers at the Facility. Declaration of Karl R. Heisler ("Heisler Decl."), ¶¶ 4, 5 (Exhibit B); Declaration of Randall B. Womack ("Womack Decl."), ¶¶ 4, 5 (Exhibit C). Plaintiffs allege that the E-Waste constitutes hazardous substances subject to CERCLA, based on total lead content from samples collected from the Facility and common industry knowledge. Heisler Decl., ¶ 7; Womack Decl., ¶ 7. Plaintiffs retained consultants to estimate the total weight of E-Waste in the Facility and to estimate the necessary costs that Plaintiffs will incur to remove it, to lawfully dispose of it, and to decontaminate the Facility by removing the lead dust deposited on the floors, walls, columns, rafters, and contents, all consistent with the U.S. Environmental Protection Agency National Contingency Plan at 40 C.F.R. Part 300. Heisler Decl., ¶ 8; Womack Decl., ¶ 8. The consultants estimated that the Facility at that time contained approximately 159,104,489 pounds (79,552 tons) of E-Waste, and that the response costs would be approximately $21,125,046. Heisler Decl., ¶¶ 8, 9; Womack Decl., ¶¶ 8, 9.

Plaintiffs have obtained Closed Loop records providing detailed accounts of the weight of E-Waste that Closed Loop received from or otherwise attributed to its customers, including accounting spreadsheets, commodity purchase agreements, bills of lading, weight tickets, purchase orders, and related shipping documentation. Heisler Decl., ¶ 6; Womack Decl., ¶ 6. Plaintiffs have also obtained discovery from the Kuusakoski Defendants, which included an accounting of E-Waste transported by the Kuusakoski Defendants to Closed Loop on behalf of

Settlors from 2012 and extending into 2016. Heisler Decl., ¶ 13; Womack Decl., ¶ 13

Plaintiffs have been using a straightforward cost recovery formula in settlement negotiations that allocates a percentage to each potentially responsible party ("PRP") based on records that identify the total weight of E-Waste that the PRP shipped to the Facility, as compared to the total weight of the E-Waste shipped to the Facility by all PRPs. Heisler Decl., ¶ 11; Womack Decl., ¶ 11. Plaintiffs then applied this percentage to the cleanup cost estimate of $21,125,046. Heisler Decl., ¶ 11; Womack Decl., ¶ 11.

Plaintiffs, however, have noted in prior motions for approval of settlement agreements that exceptions to this formula may be appropriate for some PRPs when circumstances warrant. In this case, both Plaintiffs and Settlors agree that the cost recovery formula used for prior settlors is not suitable to the allocation of liability for Settlors.

Original equipment manufacturers ("OEMs") like Settlors are a different class of defendants as compared to non-OEM settlors in terms of the factual underpinnings of their alleged liability. Heisler Decl., ¶ 12; Womack Decl., ¶ 12. Plaintiffs' theory of liability for OEMs rests in part on the fact that OEMs are subject to various state extended producer responsibility ("EPR") laws requiring them to provide for the disposition of E-Waste in exchange for authorization to sell electronic equipment in that state. Heisler Decl., ¶ 12; Womack Decl., ¶ 12. Plaintiffs contend that state EPR laws thus create a basis for CERCLA arranger liability for OEMs that elect to participate in the electronic equipment market, but in a way that is different from CERCLA arranger liability for non-OEM settlors, which contracted directly with Defendant Closed Loop. Heisler Decl., ¶ 12; Womack Decl., ¶ 12.

The manner in which the EPR obligations are discharged can make it difficult to ascribe specific weights of E-Waste at the Facility to specific OEMs with any reasonable degree of

certainty so as to support application of the same cost recovery formula used for prior settlors. Heisler Decl., ¶ 12; Womack Decl., ¶ 12. OEMs demonstrate compliance with EPR laws by providing for the disposition of E-Waste through third parties like the Kuusakoski Defendants, which complicates E-Waste tracking for settlement evaluation purposes. Heisler Decl., ¶ 12; Womack Decl., ¶ 12. In many cases, OEMs contract with third parties to provide for E-Waste to be transported to one location, where some disassembly takes place, and with the residuals transported by yet other third parties to another location. Heisler Decl., ¶ 12; Womack Decl., ¶ 12. The bill of lading for any given load of E-Waste transported to the Facility, for example, may not identify whether any OEM claimed EPR credit for all or a part of that shipment, making it difficult to attribute individual shipments E-Waste to any particular OEM. Heisler Decl., ¶ 12; Womack Decl., ¶ 12.

Further complicating the analysis is the fact that OEMs "buy" weight for purposes of meeting their EPR obligations; this may result in E-Waste subject to an OEM's EPR credits being commingled on the same truck with other E-Waste on the same bill of lading. Heisler Decl., ¶ 12; Womack Decl., ¶ 12. OEMs also sometimes rely on representations made by third parties shipping E-Waste for purposes of securing EPR credits. Heisler Decl., ¶ 12; Womack Decl., ¶ 12.

In view of the foregoing, and given that the cost recovery formula used for prior settlors does not appear suitable for Settlors, Plaintiffs have taken into consideration other information, including, but not limited to, (1) the discovery from the Kuusakoski Defendants concerning the transportation of E-Waste to Closed Loop via contractual relationships with Settlors from 2012 and extending into 2016; (2) the $2,242,482 shortfall between (a) Plaintiffs' $8,242,482 original calculated share for the Kuusakoski Defendants using the cost recovery formula and, (b) the

$6,000,000 eventual settlement with the Kuusakoski Defendants[3]; (3) the Kuusakoski Defendants' accounting of E-Waste transported by the Kuusakoski Defendants to Closed Loop on behalf of Settlors, from which percentage allocations to each Settlor were, in part, generated; (4) additional information provided by Defendant MRM and the Kuusakoski Defendants identifying potential discrepancies in the original accounting produced by the Kuusakoski Defendants; (5) the good faith willingness of Settlors to agree to resolve the matter; (6) the good faith willingness of the Kuusakoski Defendants to pay the settlement amounts allocated to Settlors, on behalf of Settlors; and (7) the fact that the settlement amounts agreed to by the Kuusakoski Defendants and Settlors will meaningfully advance cleanup efforts. Heisler Decl., ¶ 13; Womack Decl., ¶ 13.

Based solely on the accounting produced by the Kuusakoski Defendants, 11.47% of the total weight of E-Waste that the Kuusakoski Defendants transported to Closed Loop via contractional relationships with OEMs was allocated to Defendant LG; 32.28% was allocated to Defendant MRM; and 34.28% was allocated to Defendant Samsung. Heisler Decl., ¶ 14; Womack Decl., ¶ 14. These percentage allocations provided a reasonable initial basis to allocate liability between and among the Settlors for some or all of the $2,242,482 shortfall. Heisler Decl., ¶ 14; Womack Decl., ¶ 14. Plaintiffs accordingly applied these percentages to the $2,242,482 shortfall, which would have resulted in a $257,213 allocation for Defendant LG; a $723,873 allocation for Defendant MRM; and a $768,723 allocation for Defendant Samsung. Defendant MRM, however, contested the 32.28% weight allocation. Heisler Decl., ¶ 14; Womack Decl., ¶ 14. Based on further consideration of Defendant MRM's position that none of

---

[3] See *Motion for Approval of Settlement Agreement Executed by Plaintiff Garrison Southfield Park LLC, Plaintiff Olymbec USA LLC, and the Kuusakoski Defendants* (Doc. # 669) and September 27, 2021 Opinion and Order (Doc. # 787).

the E-Waste the Kuusakoski Defendants transported to Closed Loop was attributable to Defendant MRM (a position that is nevertheless contested by Plaintiffs) and additional information produced in discovery, Plaintiffs agreed to apply the 32.28% weight allocation to a more limited period of shipments to Closed Loop, such that Defendant MRM's revised allocation would be reduced to $253,356. Heisler Decl., ¶ 14; Womack Decl., ¶ 14. Plaintiffs further agreed to credit Defendant LG and Defendant Samsung with a 27% good faith discount, such that Defendant LG's revised allocation would be reduced to $187,765 and that Defendant Samsung's revised allocation would be reduced to $558,879. Heisler Decl., ¶ 14; Womack Decl., ¶ 14.

Although the allocations reflected above provide a good faith, fair, adequate, and reasonable basis to justify approval of the Settlement Agreements, the Settlors still dispute the amounts that would be allocated to them, if any, if they were to litigate this matter to conclusion.

Based on this information and these considerations, the Settlement Agreements are fair, adequate, and reasonable. Heisler Decl., ¶ 16; Womack Decl., ¶ 16; Exh. D-1, Declaration of David Meyer on behalf of Defendant LG ("LG Decl."), ¶ 6; Exh. D-2, Declaration of Richard Smith on behalf of Defendant MRM ("MRM Decl."), ¶ 6; and Exh. D-3, Declaration of Kip Bollin on behalf of Defendant Samsung ("Samsung Decl."), ¶ 6.

It is also worth noting that the State of Ohio will not object to the Settlement Agreements and will consider Settlors' CERCLA liability to the State of Ohio satisfied, subject to certain preconditions, including this Court's issuance of contribution protection pursuant to CERCLA Section 113(f)(1). *See* Exhibit E.

Plaintiffs and Settlors now ask the Court to approve the Settlement Agreements. Pursuant to Section 6 of the Settlement Agreements, consummation of the settlements is contingent on the entry of an Order providing that Settlors' settlement payments be credited *pro tanto*, and not *pro*

*rata*, in determining the equitable share of defendants other than Settlors. Plaintiffs and Settlors

ask the Court to enter an Order to that effect.

Plaintiffs and Settlors also request the Court to discharge and/or bar all past, present, and

future counterclaims, cross-claims and other claims against Settlors relating to the Facility,

including any claims that have been or which could be made by any party to this case or any

other person, except for certain claims listed in Paragraphs 4 and 9 of the Settlement Agreements

and claims for express breach of contract and contractual indemnification, consistent with this

Court's September 27, 2021 Opinion and Order. Doc. # 787. These exceptions include reopeners

in Paragraph 9 if new information reveals that Settlors were affiliated with another non-settling,

potentially responsible party. These reopeners are designed to make sure that Settlors pay their

fair share even if evidence obtained in future discovery discloses that the Settlors are responsible

for a quantity of E-Waste not considered in calculating the settlement amounts in the Settlement

Agreements. Since no other claims for express breach of contract or contractual indemnification

have been filed against Settlors or the Kuusakoski Defendants in this action, the Parties request

that the Settlors and the Kuusakoski Defendants be dismissed from the case.

## II.    <u>Argument</u>

### A.    <u>The Settlement Agreements Should Be Approved By The Court Because Settlements Are Favored, And The Settlement Agreements Are Fair, Reasonable, And Satisfy The Requirements of CERCLA.</u>

"The general policy of the law is to support voluntary settlements." *United States v.*

*Cantrell*, 92 F. Supp. 2d 718, 723 (S.D. Ohio 2000) (approving CERCLA consent decrees). *See*

*also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("In the first place, it

is the policy of the law to encourage settlements."). While a trial court must evaluate a settlement

agreement, "public policy generally supports 'a presumption in favor of voluntary settlement' of

litigation." *United States v. Lexington-Fayette Urban Cnty. Gov't*, 591 F.3d 484, 490 (6th Cir.

2010) (quoting *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991)).

The Sixth Circuit has stated that district courts must evaluate a CERCLA settlement for "fairness, reasonableness and consistency with the statute." *Akzo Coatings*, 949 F.2d at 1426. *Accord Cannons Eng'g*, 899 F.2d at 85. The same standards apply to CERCLA settlements between private parties. *Responsible Envtl. Solutions Alliance v. Waste Mgmt., Inc.*, No. 3:04-cv-013, 2011 WL 382617, at *2 (S.D. Ohio Feb. 3, 2011).

A district court is not required to delve into the fine points of a settlement, or to determine if other options are available. It is not the court's "function to determine whether [a settlement] is the best possible settlement that could have been obtained, but only whether it is fair, adequate and reasonable." *Akzo Coatings*, 949 F.2d at 1436. As explained in Subsections 1 through 4 below, the proposed settlement is fair, reasonable, and consistent with CERCLA.

### 1. The Settlement Negotiations Satisfy Procedural Fairness.

A CERCLA settlement "must be both procedurally and substantively fair." *Responsible Envtl. Solutions*, 2011 WL 382617 at *2 (citing *Cannons Eng'g*, 899 F.2d at 86). With respect to procedural fairness, "[t]here is a strong presumption in favor of voluntary settlements in CERCLA litigation." *United States v. 3M Co.*, No. 3:14-cv-32, 2014 WL 1872914, at *5, (S.D. Ohio May 8, 2014) (citing *Akzo Coatings,* 949 F.2d at 1436).

The procedural component is satisfied if the negotiations were conducted fairly. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Cannons Eng'g*, 899 F.2d at 86. While "there can be no easy-to-apply check list of relevant factors" to measure fairness, one factor to be considered is whether all defendants have "had an opportunity to participate in the

negotiations." *Id.* at 86-87. "The Court must determine that the negotiators bargained in good faith." *Cantrell,* 92 F. Supp. 2d at 724 (citing *Kelley v. Thomas Solvent Co.*, 717 F. Supp. 507, 517 (W.D. Mich. 1989)). *See also id.* ("The Court should gauge the candor, openness, and bargaining balance of the negotiations" (citing *Cannons Eng'g.*)).

In this case, Plaintiffs have reviewed Closed Loop's records as well as discovery responses made by the existing defendants to identify the PRPs that arranged for E-Waste to be transported to the Facility. Heisler Decl., ¶ 15; Womack Decl., ¶ 15. Plaintiffs' counsel have, by letter, electronic mail, and/or telephone, invited PRPs to negotiate settlements to pay for the removal and/or remediation of the E-Waste that they contributed to the Facility, except for bankrupt, dissolved, or defunct PRPs and PRPs that sent only a *de minimis* amount of E-Waste that will cost no more than $6000 to clean up. Heisler Decl., ¶ 15*;* Womack Decl., ¶ 15. Plaintiffs have negotiated with those PRPs that have expressed an interest in negotiations, and those negotiations are continuing. Heisler Decl., ¶ 15*;* Womack Decl., ¶ 15. These negotiations led to the settlement with Settlors, and may result in other settlements. Heisler Decl., ¶ 15; Womack Decl., ¶ 15.

The parties to the Settlement Agreements were represented in negotiations by independent counsel. Heisler Decl., ¶ 16; Womack Decl.; ¶ 16; LG Decl., ¶ 4; MRM Decl., ¶ 4; Samsung Decl., ¶ 4. These negotiations included, but were not limited to, evaluations of Settlors' potential liability, the strengths and weaknesses of the evidence tying Settlors to Plaintiffs' Facility, the defenses asserted by Settlors, the potential legal fees and costs if settlement does not occur, and past and projected response costs. Heisler Decl., ¶ 16; Womack Decl.; ¶ 16; LG Decl., ¶ 5; MRM Decl., ¶ 5; Samsung Decl., ¶ 5. Thus, the settlements are the product of arm's length negotiations conducted in good faith. Plaintiffs' counsel have used and will continue to consider

the same factors to negotiate settlements with other PRPs, except where warranted by unusual circumstances. Heisler Decl., ¶ 16; Womack Decl., ¶ 16. Thus, the procedural fairness test has been met.

### 2.    The Settlement Agreements Are Substantively Fair.

The substantive fairness test relates to the actual harm caused by a party at the subject site. "[A] party should bear the cost of the harm for which it is legally responsible." *3M Co.*, 2014 WL 1872914 at *5 (quoting *Cannons Eng'g*, 899 F.2d at 87). But "[t]here is no universally correct approach" to determining substantive fairness. *United States v. Atlas Lederer*, 494 F. Supp. 2d 629, 636 (S.D. Ohio 2005) (quoting *Cannons Eng'g*, 899 F.2d at 87).

Settlements must be "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each PRP has done." *Cannons Eng'g*, 899 F.2d at 87. A settlement, however, is not held to a rigid formula for comparing fault, but can "diverge from an apportionment formula in order to address special factors not conducive to regimented treatment," such as uncertainty about a settlor's liability and discounts for early settlements. *Id*. at 87-88. "There is no universally correct approach" for assessing comparative fault, and a settlement allocation with "a plausible explanation" will be approved. *Id*. at 87.

Consistent with these principles, the Kuusakoski Defendants have agreed to pay Plaintiffs $187,765 on behalf of Defendant LG; $253,356 on behalf of Defendant MRM; and $558,879 on behalf of Defendant Samsung. The Settlement Agreements contain reopeners that allow Plaintiffs to seek additional cleanup costs against a Settlor if new information is discovered demonstrating that the Settlor was affiliated with another non-settling potentially responsible party in connection with the Facility. Thus, Plaintiffs, Settlors, and the Kuusakoski Defendants

11

have entered into Settlement Agreements that are fair to everyone and satisfy the substantive fairness test.

### 3.   The Settlement Agreements Are Reasonable Because They Reflect Settlors' Actual or Potential Liability.

The Court has the task of determining if a settlement agreement compensates "for the actual (and anticipated) costs of remedial and response measures." *Cannons Eng'g,* 899 F.2d at 90. Plaintiffs have evaluated the alleged quantity of E-Waste attributed to Settlors, and have determined that the Settlors' settlement amounts are fair and reasonable given the past and projected response costs and Settlors' connection to the Facility. Heisler Decl., ¶¶ 6, 16; Womack Decl., ¶¶ 6, 16.

The strength of the evidence and the probability of success on the merits also come into play in determining if a specific settlement agreement is reasonable. *Cannons Eng'g,* 899 F.2d at 90. Thus, a "reasonableness equation relates to the relative strengths of the parties' litigation positions." *Id.* The strengths and weaknesses of plaintiffs' and defendants' evidence in a contribution action will by necessity impact the outcome of settlement negotiations.

The negotiations between Plaintiffs and Settlors included, but were not limited to, evaluations of Settlors' potential liability, the strengths and weaknesses of the evidence tying Settlors to Plaintiffs' Facility, the defenses asserted by Settlors, potential legal fees and costs if settlement does not occur, and past and projected response costs. Heisler Decl., ¶ 16; Womack Decl.; ¶ 16; LG Decl., ¶ 5; MRM Decl. ¶ 5; Samsung Decl., ¶ 5. Based on these considerations, Plaintiffs and Settlors believe that the Settlement Agreements are fair, adequate, and reasonable. Heisler Decl., ¶ 16; Womack Decl.; ¶ 16; LG Decl., ¶ 6; MRM Decl. ¶ 6; Samsung Decl., ¶ 6. Thus, these settlements are reasonable, since they are based on the relative strengths and

weaknesses of the evidence, the costs of litigation, and the chances of prevailing on the merits for both Plaintiffs and Settlors.

### 4. The Settlement Agreements Are Consistent With CERCLA.

The primary policy underlying CERCLA's provisions is "to ensure prompt and efficient cleanup of hazardous waste sites and to place the costs of those cleanups on the PRPs." *Akzo Coatings*, 949 F.2d at 1417. Settlement agreements with PRPs further the primary policy of CERCLA to investigate and remediate hazardous substances in a prompt and efficient manner. Settlement funds help to continue the work commenced by Plaintiffs to address the E-Waste.

In addition, the settlements further CERCLA's goal of requiring that "those responsible for problems caused by the disposal … bear the costs and responsibility for remedying the harmful conditions they created." *3M Co.*, 2014 WL 1872914 at *7 (quoting *Cannons Eng'g*, 899 F.2d at 90-91). *See also Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 841 (4th Cir. 1992), *cert. denied*, 506 U.S. 940 (1992) ("The statute encourages private cleanup of such [environmental] hazards by providing a cause of action for the recovery of costs incurred in responding to a 'release' of hazardous substances at any 'facility.'").

Finally, the Settlement Agreements relieve the settling parties and the Court of the burden of proceeding with the claims against Settlors all the way to trial, thereby conserving the Court's and the parties' resources in time and in money. The Settlement Agreements reached with Settlors are consistent with the underlying intent and policies of CERCLA.

### B. The Court Should Approve the Contribution Bar in the Settlement Agreements.

The Court should approve the contribution bar in the Settlement Agreements so that Settlors can be dismissed from this case without facing contribution claims from other PRPs. Defendants who wish to settle will have little incentive to do so if they cannot exit the litigation

and avoid additional monetary claims from non-settlors. The previous motions for approval of settlement agreements by Plaintiffs and settling defendants have explained the legal basis and the rationale for applying a contribution bar in this case. For the sake of efficiency, Plaintiffs and Settlors hereby incorporate by reference the argument advocating for this contribution bar contained in the motion to approve the Great Lakes Electronics Corporation and Accurate IT Services Ltd. settlements. Doc. # 832, PageId ## 10215-10219. This Court has applied the contribution bar in the instant case for each of the previous settlements approved by the Court. Doc. # 312, PageId ## 3656-3657, ¶ 3; Doc. # 400, PageId # 4506, ¶ 3; Doc. # 536, PageId ## 6035-6036, ¶ 3; Doc. # 683, PageId # 8371, ¶ 3; Doc. # 808, PageId ## 9986-9987, ¶ 2; Doc. # 820, PageId ## 10171-10172, ¶ 2; Doc. # 838, PageId # 10328, ¶ 2; Doc. # 839, PageId # 10331, ¶ 2; Doc. #  848, PageId # 10504, ¶ 2.

Plaintiffs have served a copy of this Motion for Approval of Settlement Agreement on all defendants and will soon send it to any other currently known PRPs. Heisler Decl., ¶ 17; Womack Decl., ¶ 17. Plaintiffs and Settlors request that the contribution bar apply to all claims that could be asserted against Settlors, except for any claims for express breach of contract and contractual indemnification, consistent with this Court's September 27, 2021 Opinion and Order. Doc. # 787.

C.  **Settlors' Payments Should Be Credited *Pro Tanto*, and Not *Pro Rata*,**
**in Determining Other Defendants' Equitable Shares at Trial.**

The Court's order approving the Settlement Agreements should credit Settlors' settlement payments *pro tanto* and not *pro rata* in determining other defendants' equitable shares of response costs, just as the Court has done for the previous settlements in the instant case. Doc. # 312, PageId # 3657, ¶ 4;  Doc. # 400, PageId # 4506, ¶ 4; Doc. # 536, PageId # 6036, ¶ 4; Doc. # 683, PageId ## 8370-8371, ¶ 4; ; Doc. # 808, PageId # 9987, ¶ 3; Doc. # 820, PageId # 10172, ¶

3; Doc. # 838, PageId ## 10328-10329, ¶ 3; Doc. # 839, PageId ## 10331-10332, ¶ 2; Doc. #

848, PageId # 10504, ¶ 3. Furthermore, this Court has determined that "[t]he circumstances of

this case now dictate uniform application of the pro tanto method in crediting approved

settlements."). *Garrison*, 2021 WL 4397865, at *8. The previous motions for approval of

settlement agreements by Plaintiffs and settling defendants have explained the legal basis and the

rationale for crediting payments *pro tanto* in this case. Plaintiffs and Settlors hereby incorporate

by reference the argument advocating for the *pro tanto* treatment contained in the motion to

approve the Great Lakes Electronics Corporation and Accurate IT Services Ltd. settlements.

Doc. # 832, PageId ## 10219-10225. As explained therein, *pro tanto* crediting encourages early

settlements, encourages voluntary site cleanups, promotes faster site remediation, and reduces

trial time.

**D.**     **The Court Should Enter the Settlement Agreements as a Final Judgment.**

The Court's order approving the Settlement Agreements merits entry as a final judgment

pursuant to Federal Rules of Civil Procedure 54(b) and 58. On-site cleanup activities have now

commenced at the Facility, and Plaintiffs have a limited window to complete the cleanup in

accordance with the schedule set forth in the closure plans that the Ohio Environmental

Protection Agency approved. These activities are being, and will be, paid for with settlement

proceeds from this litigation in furtherance of hazardous waste closure plans and CERCLA

engineering evaluation/cost analysis ("EE/CAs") approved by the Ohio Environmental

Protection Agency ("Ohio EPA").[4] Without the additional layer of finality in judgment provided

---

[4] Garrison and Olymbec voluntarily submitted the closure plans and EE/CAs to demonstrate
compliance with, among other things, the U.S. Environmental Protection Agency National
Contingency Plan at 40 C.F.R. Part 300. See https://www.ensafe.com/closedloop/ (providing the
full administrative records, including responses to public comments, for Watkins Road and
Fairwood Avenue).

by the entry of an order pursuant to Rules 54(b) and 58, Plaintiffs cannot commit the settlement

proceeds from Settlors to these cleanup efforts without risking substantial financial exposure, as

Plaintiffs would otherwise retain the risk of having to return the settlement proceeds to Settlors

until court approval of the Settlement Agreements is final and non-appealable. Plaintiffs are

entitled to know if they will obtain the benefit of the bargain reached with Settlors before

incurring these costs.

      The Court has entered final judgment on all of the settlements it has approved in this

case. *Garrison Southfield Park LLC v. Closed Loop Refining and Recovery, Inc.,* No. 2:17-cv-

783, 2021 WL 1611325, at *1 (S.D. Ohio, Apr. 26, 2021); Doc. # 808, PageId ## 9987-9991;

Doc. # 820, PageId # 10172, ¶ 5; Doc. # 838, PageId # 10329, ¶ 5; Doc. # 839, PageId # 10332, ¶

5; Doc. # 848, PageId # 10505, ¶ 5. Consistent with these prior settlement agreements, and for all

the reasons set forth above and below, Plaintiffs and Settlors herein request that the Court direct

the entry of final judgment and find that there is no just reason to delay an appeal.

      **1.**      **Fed. R. Civ P. 54(b)**

      As this Court opined in these consolidated cases in an order certifying orders approving

prior settlements under Rule 54(b), achieving finality pursuant to Rule 54(b) involves a two-step

analysis: "the district court must expressly 'direct the entry of final judgment as to one or more

but fewer than all the claims or parties in a case'" and then the court must "'expressly find that

there is no just reason' to delay appellate review." *Garrison Southfield Park LLC v. Closed Loop

Refining and Recovery, Inc.,* No. 2:17-cv-783, 2021 WL 1611325, at *1 (S.D. Ohio, Apr. 26,

2021) (citing *Gen. Acquisition, Inc. v. GenCorp., Inc.,* 23 F.3d 1022, 1026 (6th Cir. 1994). *See

also Ball v. Kasich,* No. 2:16-cv-282, 2020 WL 4528822, at *3 (S.D. Ohio, Aug. 6, 2020),

*appeal docketed*, No. 20-3927 (6th Cir., Sept. 3, 2020).

       a.      **<u>Step 1:  Final Judgment</u>**

Rule 54(b) authorizes the Court "<u>to direct entry of a final judgment as to one or more, but</u> <u>fewer than all, claims or parties</u> only if the court expressly determines that there is no just reason for delay." Emphasis added. This <u>first step</u> is implicated in the ultimate disposition of one or more but fewer than all claims or parties in a multi-claim/multi-party action, as is presented in the instant CERCLA litigation. The rule "relaxes the traditional finality requirement for appellate review," and is specifically "designed to facilitate the entry of judgment on one or more claims, or as to one or more parties, in a multi-claim/multiparty action." *Gen. Acquisition,* 23 F.3d at 1026 (citing *Solomon v. Aetna Life Ins. Co.,* 782 F.2d 58, 60 (6th Cir. 1986)).

To satisfy this first step: "A district court must first determine that it is dealing with a 'final judgment.' It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Gen. Acquisition*, 23 F.3d at 1027 (quoting *Curtis-Wright Corp. v. Gen. Elec. Corp*., 446 U.S. 1, 7 (1980)). *See also United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1053 (D. Mass. 1989), *aff'd, United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990) (internal citations omitted) (finding that, for purposes of Fed. R. Civ. P. 54(b), (1) CERCLA "Consent Decrees constitute 'judgments' because they resolve all liability of the settling defendants on 'cognizable claim[s] for relief' brought by plaintiffs under CERCLA" and (2) the "judgment is 'final' because the Consent Decrees constitute an 'ultimate disposition of an individual claim entered in the course of a multiple claims action.'").

To satisfy step one, the Court should direct the Clerk to enter an order approving the Settlement Agreements as having the full force and effect of a final judgment under Federal Rule

of Civil Procedure 54(b).

        **b.**     <u>**Step 2: Delay**</u>

Rule 54(b) authorizes the Court "to direct entry of a final judgment as to one or more, but fewer than all, claims or parties <u>only if the court expressly determines that there is no just reason for delay</u>." Emphasis added. This <u>second step</u> is required to "determine that there is no just reason for delay in certifying a final judgment." *Garrison,* 2021 WL 1611325, at *1. The opinion accompanying the judgment entry must also provide a reasoned analysis of the grounds for such a determination. *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc*., 807 F.2d 1279, 1284-85 (6th Cir. 1986). This analysis involves, among other things, "strik[ing] a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants." *Gen. Acquisition*, 23 F.3d at 1027 (quoting WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2655 (1983 & Supp. 1993)).

Citing the Sixth Circuit's decision in *Corrosioneering*, this Court has articulated the following non-exhaustive factors to consider in making a determination that "there is no just reason for delay" for purposes of the second step of the Rule 54(b) analysis:

> (1) the relationship between the adjudicated and non-adjudicated claims; (2) the possibility that the need for appellate review might become moot due to future developments in the district court; (3) the possibility that the appellate court might be required to hear the same issue twice; (4) the presence or absence of a claim or counterclaim that might result in a set-off against the final judgment; and (5) other miscellaneous factors, including "delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like."

*Garrison*, 2021 WL 1611325, at *2 (quoting *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 596 (6th Cir. 2013). Each factor is addressed below.

First, with respect to any relationship between adjudicated and non-adjudicated claims, the proposed order dismisses only those claims asserted, to be asserted, or which could be asserted against Settlors, including, by incorporation of the Settlement Agreements, the "Claims brought in *Garrison Southfield Park LLC v. Closed Loop Refining and Recovery, Inc., et al*., Case No. 2:17-cv-00783-EAS-EPD (S.D. Ohio), and *Olymbec USA LLC v. Closed Loop Refining and Recovery, Inc., et al*., Case No. 2:19-cv-01041-EAS-EPD (S.D. Ohio), against SETTLORS." *See, e.g.*, Exh. A-1, Settlement Agreement, ¶ 6. As stated in the Court's decision certifying the final judgment for prior settlements in this case, "[t]he adjudicated claims do not prevent the non-adjudicated claims from being fully and fairly adjudicated." *Garrison*, 2021 WL 1611325, at *2. Indeed, CERCLA contemplates that there can be adjudication or disposal of claims against one or more versus all parties to an action. CERCLA clearly authorizes a court to immunize PRPs like Settlors "for claims for contribution regarding matters addressed in the settlement," despite the existence of claims left to be adjudicated, given that the settlement "reduces the potential liability of the others by the amount of the settlement." 42 U.S.C. § 9613(f)(2). The same concept applies in private cost recovery actions where contribution protection is provided via CERCLA § 113(f)(1). Any construction to the contrary would constitute an end run around CERCLA's statutory scheme to immunize settling parties from liability despite the "corresponding detriment to their more recalcitrant counterparts." *Cannons Eng'g*, 899 F.2d at 91. *See also United States v. Pretty Prods., Inc*., 780 F. Supp. 1488, 1496 n. 7 (S.D. Ohio 1991) (barring contractual indemnification claim by non-settling party against settling party pursuant to CERCLA § 113(f)(2), and noting "this Court would be skeptical of any attempt to make an end run around CERCLA's contribution immunity").

Second, there is no possibility that the need for appellate review might become moot due

to future developments in the district court if the Court grants this motion and accompanying proposed order. As with prior settlements in this case, the issues that would be presented for appellate review are limited to whether the Settlement Agreements with Settlors are fair and reasonable, and whether the terms of the proposed order extending contribution protections to Settlors are consistent with CERCLA and applicable law. *Garrison*, 2021 WL 1611325, at *2. These issues are specific to Settlors, which would be dismissed from the case with prejudice. There will accordingly be no future rulings in this Court involving Settlors that would moot any need for appellate review of these issues.

     <u>Third</u>, there is little possibility that the appellate court might be required to hear the same issue twice for all of the reasons noted immediately above:  the appellate review would be specific to Settlors, which would be dismissed from the case with prejudice if the Court grants this motion and accompanying proposed order. *Id*. This concern is further mitigated by the fact that approval of settlements is "committed to the discretion of the district court," with such "discretion to be exercised in light of the strong policy in favor of voluntary settlement of litigation." *Cannons Eng'g Corp.*, 720 F. Supp. at 1053 (granting a motion for entry of the "Major PRP Consent Decree" as a final judgment pursuant to Fed. R. Civ. P. 54(b)).

     <u>Fourth</u>, with respect to claims or counterclaims that might result in a "set-off" against the final judgment, set-offs are not only contemplated, but commanded, in CERCLA litigation. *Garrison*, 2021 WL 1611325, at *2 (noting that "[t]his is par for the course in CERCLA litigation and furthers CERCLA's goal of effectuating prompt cleanup of hazardous waste sites by imposing cleanup costs on responsible parties."). CERCLA settlements reduce the amount of the remaining liable parties' liability by the dollar amount of the settlements. *Id*. This Court has found on multiple occasions that payments by the settling defendants to Plaintiffs should be

credited *pro tanto*, thus reducing the liability of the remaining liable parties by the dollar amount of settling defendants' payments. For all of the reasons set forth above and in prior motions to approve settlement agreements, Plaintiffs and Settlors similarly request a *pro tanto* approach because it "will best serve the purposes of CERCLA at this time given that the approach is known to facilitate settlement among holdout defendants. . . ." Doc. # 536, PageId # 6034.

Fifth, there are several other miscellaneous factors that weigh in favor of a finding that there is no just reason for delay. Perhaps most notably, the prospect of an appeal of these Settlement Agreements years from now would undermine the primary policy of CERCLA to remediate hazardous substances in a "prompt and efficient" manner. *Akzo Coatings*, 949 F.2d at 1417. It would "disserve a principal end of [CERCLA] – achievement of prompt settlement and a concomitant head start on response activities – to leave matters in limbo until more precise information was amassed." *Cannons Eng'g,* 899 F.2d at 88. *See also Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 576 (9th Cir. 2018) (finding that the appellate court had jurisdiction under Fed. R. Civ. P. 54(b) to hear the appeal because "[t]his is a complex case that has been ongoing for fourteen years, and the entry of partial judgment against Teck would help ensure that a responsible party promptly pays for the contamination of the Upper Columbia River, advancing CERCLA's goals and easing the Tribes' burden of financing the litigation effort"). As stated by the Court in this case, a final judgment "will facilitate faster cleanup of the e-waste at issue in this case and mitigate Plaintiffs' risk that settlement funds will have to be refunded potentially several years down the line." *Garrison*, 2021 WL 1611325, at *2.

In this case, Plaintiffs' burden of financing this litigation has been compounded with the burden of financing ancillary litigations, including litigation with insurance carriers for multiple defendants. Separate and apart from these litigations, Plaintiffs have further "suffered severe

financial losses" in connection with Closed Loop's abandonment of the Facility, including lost rent and attorneys' fees, much of which is not recoverable under CERCLA. Doc. # 539; PageId # 6025, n. 6. These losses and the prospect of future financial risk merit serious consideration in entering these Settlement Agreements as a final judgment.

Equitable factors specific to CERCLA cost recovery actions likewise warrant a finding that there is no just reason for delay. As discussed by the lower court (and as affirmed on appeal) in *United States v. Cannons Engineering Corp*:

> Moreover, in view of the complexity of this litigation, the public interest in prompt cleanup, and the statutory goal of providing finality to settling defendants, the court finds that there is no just reason to delay the entry of final judgment. The settling defendants who have negotiated a settlement of their claims in good faith should not have to wait until the resolution of plaintiffs' claims against non-settling defendants to learn whether the settlements are final, particularly because CERCLA expressly authorizes the United States to enter into settlements which do not involve all potential defendants. *See* 42 U.S.C. § 9622. The settling defendants are, under the Consent Decrees, obligated to make payments and/or perform work. They are entitled to know if they will obtain the benefit of their bargains before incurring these substantial costs.

720 F. Supp. at 1053. *See also Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec. Co.,* No. 3:07-CV-66-SEB-WGH (filed May 21, 2007) (routinely approving joint motions to approve CERCLA settlement agreements as final, appealable judgments pursuant to Rule 54(b) (*e.g.*, Doc. ## 873, 874, 882, 893, 898).

## 2. <u>Fed. R. Civ. P. 58</u>

Rule 58 requires that "[e]very judgment . . . must be set out in a separate document" subject to certain delineated exceptions that do not apply here. The Court should accordingly enter an order approving these Settlement Agreements as a document separate and apart from the Court's opinion in order to satisfy Rule 58.

## III.  Conclusion

For all the foregoing reasons, Plaintiffs and Settlors request that the Court grant the Order approving the Settlement Agreements as a final judgment under Rules 54(b) and 58.

Respectfully submitted,

**BROWN LAW OFFICE LLC**

/s/ Daniel A. Brown
Daniel A. Brown (#0041132)
Trial Attorney
204 S. Ludlow St., Suite 300
Dayton, OH 45402
Tel: (937) 224-1216 (direct)
Fax: (937) 224-1217
Email:  dbrown@brownlawdayton.com

Of Counsel:

**GLANKLER BROWN, PLLC**

/s/ Randall B. Womack
Randall B. Womack (*pro hac vice*)
6000 Poplar Avenue, Suite 400
Memphis, TN 38119
Tel: (901) 525-1322
Fax: (901) 525-2389
Email:  rwomack@glankler.com

*Attorneys for Plaintiff Olymbec USA LLC*

**ULMER & BERNE LLP**

/s/ David A. Meyer
David A. Meyer (#0066970)
Trial Attorney
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202-4029
Tel: (513) 698-5046
Fax: (513) 886-3455
Email:  dmeyer@ulmer.com

*Attorney for Defendant LG Electronics, Inc.*

**VAN KLEY LAW, LLC**

/s/ Jack A. Van Kley
Jack A. Van Kley (#0016961)
Trial Attorney
132 Northwoods Blvd., Suite C-1
Columbus, OH 43235
Tel: (614) 431-8900
Fax: (614) 431-8905
Email:  jvankley@vankley.law

Of Counsel:

**KING & SPALDING LLP**

/s/ Karl R. Heisler
Karl R. Heisler (*pro hac vice*)
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Tel: (312) 764-6927
Fax: (312) 995-6330
Email:  kheisler@kslaw.com

*Attorneys for Plaintiff Garrison
Southfield Park LLC*

**REMINGER CO., L.P.A.**

/s/ Vince P. Antaki
Vince P. Antaki (#0072471)
Trial Attorney
525 Vine Street, Suite 1500
Cincinnati, Ohio 45202
Tel: (513) 455-4031
Fax: (513) 721-2553
vantaki@reminger.com

**THOMPSON HINE LLP**

/s/ *Kip T. Bollin*
Kip T. Bollin (65275)
Trial Attorney
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
Tel: (216) 566-5500
Fax: (216) 566-5800
Email: Kip.Bollin@thompsonhine.com

Kevin D. Oles (86990)
41 South High Street, Suite 1700
Columbus, Ohio 43215-6101
Tel: (614) 469-3227
Fax: (614) 469-3361
Email: Kevin.Oles@thompsonhine.com

*Attorneys for Defendant Samsung Electronics America, Inc.*

Of Counsel:

**WILEY REIN LLP**

/s/ *Richard W. Smith*
Richard W. Smith (*pro hac vice*)
2050 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 719-7468
rwsmith@wiley.law

*Attorneys for Defendant Electronic Manufacturers Recycling Management Company, LLC*

**MCMAHON DEGULIS LLP**

/s/ *Gregory John DeGulis*
Gregory John DeGulis (#0045705)
Trial Attorney
The Caxton Building
812 Huron Road, Suite 650
Cleveland, OH 44115-1126
Tel: (216) 621-1312
Fax: (216) 621-0577
gdegulis@mdllp.net

Of Counsel:

**LATHROP GPM LLP**

/s/ *William Ford*
William Ford (*pro hac vice*)
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108
Tel: (816) 460-5817
Fax: (816) 292-2001
wford@lathropgpm.com

*Attorneys for the Kuusakoski Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that, on October 31, 2022, a copy of the foregoing

Motion to Approve Settlement Agreements was filed electronically with the Court's CM/ECF

system, which will send notification to all attorneys registered to receive such service. Parties

may access this filing through the Court's electronic filing system.

<u>*/s/ Randall B. Womack*</u>
Randall B. Womack *(pro hac vice)*

*Attorney for the Plaintiff*
*Olymbec USA LLC*